*798
 
 OPINION
 

 Per Curiam:
 

 Andrew Flaherty (“the buyer”) contacted respondent James Ryan (“Ryan”) and expressed interest in purchasing approximately twenty acres of Ryan’s land located in Clark County for $15,000 per acre. Ryan told his friend John Brown (“Brown”), a broker with 5-C Realty, that he was concerned that the buyer may be “low-balling” him. Brown and Ryan entered a written listing agreement under which Brown was entitled to a six percent commission if he “procure[d] a purchaser” for the property. Brown contacted the buyer and helped to negotiate a sale of the property. After the closing, Ryan refused to pay Brown his commission.
 

 Brown and 5-C Realty brought an action against Ryan for breach of contract or, in the alternative, for unjust enrichment. The district court granted summary judgment for Ryan, apparently concluding that Brown was not entitled to a commission because he was not the procuring cause of the sale. Brown claims that he raised substantial factual issues which precluded summary adjudication of the dispute. We agree.
 

 As an initial matter, having reviewed the briefs of the parties, we are concerned that they and others may misunderstand the import of the two-part test as announced in Shell Oil Co. v. Ed Hoppe Realty Inc., 91 Nev. 576, 580, 540 P.2d 107, 109-10 (1975) (citations omitted), and in subsequent cases: “Of course,
 
 *799
 
 before a real estate agent is entitled to a commission, an employment contract must be shown, and the agent must have been the ‘procuring cause’ of the sale.”
 
 See also
 
 Atwell v. Southwest Securities, 107 Nev. 820, 823, 820 P.2d 766, 768 (1991); Morrow v. Barger, 103 Nev. 247, 250, 737 P.2d 1153, 1154 (1987). As this court explained in Humphrey v. Knobel, 78 Nev. 137, 141-45, 369 P.2d 872, 874-75 (1962), the doctrine of “procuring cause” developed primarily to protect the broker where he or she arranges a sale but nonetheless, according to the strict terms of the broker’s contract, the broker is not otherwise entitled to a commission.
 
 See also
 
 1 Harry D. Miller & Marvin B. Starr,
 
 Current Law of California Real Estate
 
 § 2:20 (2d ed. 1989); D. Barlow Burke, Jr.,
 
 Law of Real Estate Brokers
 
 § 3.4 (2d ed. 1992). Additionally, courts have relied on the doctrine of “procuring cause” where more than one broker claims entitlement to the commission. Bartsas Realty, Inc. v. Leverton, 82 Nev. 6, 409 P.2d 627 (1966);
 
 Law of Real Estate Brokers
 
 § 3.4. Currently, the doctrine of “procuring cause” is so well established in the law of broker’s transactions that courts readily interpret the requirement into listing agreements for the protection of the vendor as well as of the broker.
 
 See, e.g.,
 
 Manning v. Briar Hall North, Inc., 542 N.Y.S.2d 711, 712 (N.Y.App.Div. 1989) (a listing agreement’s inclusion of the term “brokerage fee” encompassed the requirement that the broker be the procuring cause of the sale, and therefore the broker could not recover a commission).
 

 Although the doctrine of “procuring cause” has become a pervasive tool in resolving disputes over broker’s commissions, it does not limit the freedom of a vendor and purchaser to bargain over the nature of the broker’s performance. Caldwell v. Consolidated Realty, 99 Nev. 635, 638, 668 P.2d 284, 286 (1983). (“Where a broker’s action to recover a commission for the sale of real property is based on a listing agreement, the terms of the agreement govern the broker’s right to compensation.”);
 
 Cf.
 
 Nollner v. Thomas, 91 Nev. 203, 207, 533 P.2d 478, 481 (1975) (where parties negotiated specific terms for payment of commission, “procuring cause” doctrine was not a part of listing agreement so as to modify those terms); Greene v. Hellman, 412 N.E.2d 1301, 1307 (N.Y. 1980)
 
 ("[SJave when he enjoys the benefit of a special agreement to the contrary,”
 
 to be entitled to a commission the broker must be the procuring cause of the sale. (Emphasis added.)) Satisfying this court’s two-part test is not an absolute prerequisite to a broker’s recovery of a commission where the parties have bargained to define more precisely the broker’s duties under the listing agreement.
 

 The present case illustrates the importance of preserving the
 
 *800
 
 parties’ freedom to bargain over the broker’s duties. Ryan enlisted Brown’s aid for the limited purpose of negotiating a sale with a known buyer. The parties could have negotiated a broker’s agreement defining the limited parameters of Brown’s performance and setting forth compensation commensurate with that performance. Instead, Ryan executed the listing agreement on a form provided by Brown.
 
 [1]
 
 Consequently, Brown’s right to recovery depends upon whether he has performed according to the terms of the form contract, or whether he has demonstrated a right to a commission in
 
 quantum meruit.
 
 Although Brown proffers two theories of liability, these theories depend upon an identical question of fact: whether Brown was the “procuring cause” of the sale of Ryan’s land.
 

 Under the terms of the listing agreement, Brown’s right to a commission depends upon whether he “procure[d]” the buyer. Ryan contends that Brown did not procure the buyer because the buyer and Ryan opened negotiations prior to Brown’s involvement. Brown counters that he did procure the buyer because his efforts were instrumental in bringing the buyer and seller together with respect to the terms of the sale. In addressing the contract claim, we must first ascertain the meaning of “procure[d]” as used in the listing agreement.
 

 “Where technical words are used and their meaning has previously been conclusively settled by long usage and judicial construction, the use of the words without an indication of an intention to give them a new significance is an adoption of their accepted meaning at the time when used.” Giustina v. United States, 190 F.Supp. 303, 308 (D.Or. 1960); 17A C.J.S.
 
 Contracts
 
 § 302(1) (1963); 4 Walter H.E. Jaeger,
 
 Williston on Contracts
 
 § 614 (3d ed. 1961).
 
 [2]
 
 On many occasions, this court has
 
 *801
 
 addressed the issue of whether a broker procured a buyer, or, in other words, whether a broker was the “procuring cause” of a sale.
 
 See, e.g.,
 
 Binder v. Levy Realty Co., 106 Nev. 221, 225, 790 P.2d 497, 500 (1990);
 
 Morrow,
 
 103 Nev. at 253, 737 P.2d at 1157-58. Accordingly, in examining whether Brown procured a buyer within the meaning of the listing agreement, we avail ourselves of the decisional law regarding procuring cause.
 

 Brown’s alternative theory of liability, that he is entitled to a commission in
 
 quantum meruit,
 
 also hinges upon whether Brown was the procuring cause of the sale. As noted previously, where a broker is not entitled to a commission according to the strict terms of a contract, a broker may nonetheless recover a commission if the broker shows: “(1) an employment contract existed,
 
 [3]
 
 and (2) the broker was the procuring cause of the sale.” Atwell v. Southwest Securities, 107 Nev. 820, 823, 820 P.2d 766, 768 (1991);
 
 Morrow,
 
 103 Nev. at 250, 737 P.2d at 1154;
 
 Shell Oil Co.,
 
 91 Nev. at 580, 540 P.2d at 109-10. On appeal, neither party has disputed the existence of an employment contract between Ryan and Brown. Thus, Brown’s right to recover in
 
 quantum meruit
 
 depends upon whether he procured the buyer.
 

 The trial court may grant a motion for summary judgment only if “there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.” NRCP 56. This court must review the evidence “in the light most favorable to the party against whom judgment was rendered.” Tschabold v. Orlando, 103 Nev. 224, 225, 737 P.2d 506, 507 (1987).
 

 To be the procuring cause of a sale, a broker must “set in
 
 *802
 
 motion a chain of events which, without break in their continuity, cause the buyer and seller to come to terms as the proximate result of his or her peculiar activities.”
 
 Binder,
 
 106 Nev. at 225, 790 P.2d at 500 (quoting
 
 Morrow,
 
 103 Nev. at 253, 737 P.2d at 1157). “Whether a broker’s efforts constitute the ‘procuring cause’ of a sale is a question of fact. Thus, this issue is not generally appropriate for summary judgment.”
 
 Atwell,
 
 107 Nev. at 825, 820 P.2d at 769 (citation omitted). The determination of this ultimate factual issue depends upon a close examination of the prevailing circumstances in each case. Thus, appellate courts have had little success in defining parameters for the factual inquiry:
 

 The California courts have not given a clear definition of ‘procuring cause,’ apparently preferring instead to leave the matter more to the wide discretion of the trial court in arriving at a factual determination of the issue in each case, guided only by the broadly expressed principle that, as one court colorfully put it, “He who shakes the tree is the one to gather the fruit.”
 

 1 Harry D. Miller & Marvin B. Starr,
 
 Current Law of California Real Estate
 
 § 2:20 (2d ed. 1989) (citation omitted);
 
 see
 
 Bartsas Realty, Inc. v. Leverton, 82 Nev. 6, 9, 409 P.2d 627, 629 (1966) (“It is impossible to measure in quantitative units the efforts necessary to constitute ‘procuring cause.’”).
 

 Although the concept of “procuring cause” is not conducive to precise legal measurement, this court has recognized some general principles applicable to it. For example, a broker’s efforts in bringing about the sale must be more than “merely trifling.”
 
 Binder,
 
 106 Nev. at 225, 790 P.2d at 499. Additionally, “ ‘[w]hether the broker first approaches, or brings to the attention of the buyer that the property is for sale, or brings the buyer into the picture, has considerable weight in determining whether the [broker] is the procuring cause of the sale.’ ”
 
 Atwell,
 
 107 Nev. at 825, 820 P.2d at 770 (alteration in original) (quoting
 
 Morrow,
 
 103 Nev. at 254, 737 P.2d at 1157). However, whether the broker initially introduces the buyer and seller is not dispositive as a matter of law.
 
 Morrow,
 
 103 Nev. at 254, 737 P.2d at 1157 (where brokers introduced buyers and sellers, issue of procuring cause still depended on whether brokers were the proximate cause of the sale); Rose v. Hunter, 317 P.2d 1027, 1030 (Cal.Ct.App. 1957) (broker need not prove he was first to bring property to purchaser’s attention). To be a procuring cause, the broker need not make the actual sale or terms thereof, nor must the broker be present at the sale.
 
 Morrow,
 
 103 Nev. at 253, 737 P.2d at 1156.
 

 
 *803
 
 In the instant case, Brown submitted evidence which indicated that his participation was more than trifling. The buyer testified in deposition that negotiations progressed because of Brown’s participation. Brown had “probably eight to ten” telephone conversations with the buyer and conducted a meeting with the buyer at Brown’s house. Although the buyer drafted the sale agreement, Brown had “gone over every line of it” with the buyer. The buyer described Brown as a “key ingredient” and “instrumental” in arranging the sale.
 

 Ryan contends that Brown’s participation was trivial because he did not attempt to find other buyers or list the property, and because Brown’s involvement in the transaction was so peripheral that he did not even know the date of the closing or the final purchase price. None of these factors are dispositive as a matter of law. If Brown became involved in the transaction specifically to assist Ryan in negotiations with the buyer, there is no reason for him to have sought out other buyers or to have listed the property. Likewise, knowledge of the final terms of the agreement is not critical.
 

 The fact that Ryan and the buyer commenced negotiations prior to Brown’s involvement may weigh heavily against Brown at trial. However, this consideration alone cannot support the district court’s order granting summary judgment.
 

 In deposition, the buyer suggested that the sale would not have occurred but for Brown’s efforts. Thus, Brown has established that he was an actual cause of the sale. Whether Brown’s involvement was the proximate cause of the sale “necessarily involves questions of fact” which, under the circumstances, the district court could not resolve on a motion for summary judgment.
 
 Morrow,
 
 103 Nev. at 254, 737 P.2d at 1157.
 

 Accordingly, we reverse the district court’s order granting summary judgment for Ryan, and we remand the case for a trial on the merits.
 

 [1]
 

 After reviewing the record in this case, we are left with the impression that neither Ryan nor Brown paused to consider how well the form agreement suited his needs. Because the buyer offered $15,000 per acre prior to Brown’s involvement, it is unlikely that Ryan would have agreed to allow Brown to take a six percent commission on this portion of the purchase price. Likewise, because the buyer and Ryan had already opened negotiations, it is unlikely that Brown would submit his right to a commission to the vagaries of a “procuring cause” analysis. Although Brown apparently performed up to Ryan’s expectations, a finder of fact may be justified in finding that Brown cannot recover a commission because he was not the procuring cause of the sale.
 

 [2]
 

 Of course, this rule of interpretation has limits. For example, in dealings between a lay person and a party with special expertise over the subject matter of the transaction, we would hesitate to rely on a technical definition to defeat the reasonable expectations of the lay person.
 
 See
 
 Rodriguez v. General Accident Ins. Co., 808 S.W.2d 379, 382 (Mo. 1991). In the instant case, both parties have interpreted the listing agreement in light of this court’s legal/technical definition of “procuring cause.”
 

 [3]
 

 This requirement may seem at odds with the theoretical underpinnings of an award in quasi-contract, because this theory of liability purports to compensate a party who,
 
 in the absence of an agreement,
 
 has enriched another.
 
 See
 
 1 Arthur L. Corbin,
 
 Corbin on Contracts
 
 § 19 (1963). However, we believe that an award in quasi-contract is reconcilable with the requirement of an employment contract.
 

 The requirement of an employment contract is satisfied where the circumstances surrounding the transaction indicate that the vendor and broker entered an “employment relationship.”
 
 Morrow,
 
 103 Nev. at 253-54, 737 P.2d at 1156; Shell Oil Co. v. Ed Hoppe Realty Inc., 91 Nev. 576, 580, 540 P.2d 107, 109-10 (1970). Accordingly, where no such relationship exists, or where the vendor expressly refuses to enter a relationship in which it would be liable for a commission, this court has denied relief to the broker. Summa Corp. v. DeSure Corp., 103 Nev. 144, 147, 734 P.2d 715, 717 (1987) (broker could not recover in quantum meruit where vendor “clearly announced its intention not to contract with a broker”); Lawry v. Devine, 82 Nev. 65, 410 P.2d 761 (1966). So long as the broker and vendor enter an employment relationship, the requirement of an employment contract does not preclude recovery in
 
 quantum meruit.